UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BITTMAN LAW FIRM, PLLC, | ) | Case: 1:25−mc−00128 |
| | ) | Assigned To : Sullivan, Emmet G. |
| *Petitioner*, | ) | Assign. Date : 8/4/2025 |
| | ) | Description: Misc. Case (O−DECK) |
| vs. | ) | |
| | ) | Case No. _____ |
| CLIFFORD BOYNES, et al., | ) | |
| | ) | |
| *Respondents*. | ) | |
| | ) | |

## MOTION TO QUASH SUBPOENA UNDER FED. R. CIV. P. 45
## OR FOR A PROTECTIVE ORDER UNDER FED. R. CIV. P. 26

The Bittman Law Firm, PLLC ("BittmanLaw") moves under Rule 45 of the Federal Rules of Civil Procedure to quash a subpoena from class-action plaintiffs ("Respondents") who are in litigation against BittmanLaw in Houston, Texas and now unjustifiably seek privileged communications at the heart of BittmanLaw's attorney-client relationship. Ex. 1 (July 16, 2025 subpoena to BittmanLaw)(hereinafter "Subpoena"). BittmanLaw represents a third-party witness, Jeffrey Rinker, who has been subpoenaed by Respondents for deposition in Houston, where Mr. Rinker resides and works. The Subpoena to BittmanLaw seeks to obtain communications and documents integral to representation of Mr. Rinker and squarely covered by the attorney-client and work-product privileges, impose an undue burden on BittmanLaw, or both. The Court should quash the Subpoena, or, in the alternative, enter a protective order preventing the discovery that Respondents seek.

### I.    SUMMARY

The Subpoena emanates from BittmanLaw's assertion of his client's Fifth Amendment rights not to testify in a deposition requested by Respondents. Unhappy with Mr. Rinker's assertion of his rights, Respondents lashed out, (1) threatening contempt findings against

**RECEIVED**

AUG 4 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

BittmanLaw and others, and (2) filing a Motion for Sanctions against Mr. Rinker, BittmanLaw, BittmanLaw's then-co-counsel (Baker Donelson), and BittmanLaw's local counsel in Houston (R. McConnell Group PLLC).[1]  After announcing their intention to move for sanctions, including against the undersigned personally, Respondents issued subpoenas to three law firms, including BittmanLaw, seeking privileged communications between the law firms and counsel for the Defendants about the matter that is the subject of Respondents' Motion for Sanctions.  Respondents' Subpoena is a brazen and improper attempt to obtain the privileged communications of an adversary law firm on the very subject matter at issue in active litigation between the parties.  Moreover, apart from Respondents' subpoena to Mr. Rinker for his deposition, Respondents have now not only moved for sanctions against Mr. Rinker and BittmanLaw, among others, for conduct related to Mr. Rinker's assertion of his Fifth Amendment Rights, but they have also issued a subpoena to BittmanLaw and other adversary attorneys for documents related to the very issues being litigated in federal court in Houston.

One can understand Respondents' frustration at their inability to obtain the testimony of Mr. Rinker and others *at this time*,[2] but that is not a sufficient basis to invade the attorney-client relationship by seeking privileged communications at the heart of the issues being litigated in Houston.[3]  More than 75 years ago, the Supreme Court explained why it is improper for attorneys to obtain the work product of their adversaries:

---

[1] After Respondents filed their Motion for Sanctions in Houston on July 22, 2025, against Mr. Rinker, BittmanLaw, Baker Donelson, et al., Baker Donelson withdrew from their joint representation of Mr. Rinker.

[2] Mr. Rinker has offered to testify at a deposition *after* his legal jeopardy has passed in about nine months or so – that is, after the statute of limitations runs in May 2026.

[3] When the undersigned conferred with Respondents' counsel about his intention to seek a protective order relating to Mr. Rinker's assertion, counsel for Respondents derisively disavowed the validity of Mr. Rinker's assertion of his Fifth Amendment Rights, stating in sum and substance that the assertion was meritless and that he was going to do everything he could to

> In performing his various duties, … it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947). This is the precise intrusion Respondents attempt with this Subpoena and that the Supreme Court – and subsequent rules – prohibit.

## II.    JURISDICTION

This Court has jurisdiction over this matter because BittmanLaw, which is incorporated and regularly transacts business in the District of Columbia, is required to comply with the subpoena in the District of Columbia. Subpoena at 1 (requiring that compliance, *i.e.,* production of documents, be made to 4725 Wisconsin Ave., N.W., Washington, DC); *see* Fed. R. Civ. P. 45(d)(3)(A) (motion to quash must be filed with "the court for the district where compliance is required").

## III.    BACKGROUND

The Subpoena to BittmanLaw arises out of class-action litigation initiated in the U.S. Virgin Islands. In consolidated cases,[4] several groups of plaintiffs filed suits ("the USVI case")

---

fight the assertion. Respondents' counsel's assessment of Mr. Rinker's legal risk is erroneous. It is easy for one not in legal jeopardy to dismiss the risk of legal jeopardy for someone else. In any event, it is a decision for Mr. Rinker and his experienced criminal counsel to provide a good faith, informed judgment about his legal risk – particularly in light of the existing criminal investigation, the allegations in the case, and other factors. Again, Mr. Rinker is willing to sit for a deposition in the case after his legal jeopardy has passed; he has never said that he will never be willing to sit for a deposition.

[4] The consolidated cases in the District of the Virgin Islands are *Clifford Boynes v. Limetree Bay Ventures*, No. 1:21-cv-0253; *Shirely v. Limetree Bay Ventures*, No. 1:21-cv-0259; *Moorhead v. Limetree Bay Ventures*, No. 1:21-cv-0260; and *Cotton v. Limetree Bay Ventures*, LLC, No. 1:21-cv-0261.

against multiple defendants in connection with four incidents between February 2021 and May 2021 resulting in emissions of substances into the community after an effort to restart an oil refinery located in Limetree Bay ("Limetree Bay Refinery"), an area in St. Croix in the U.S. Virgin Islands. *See Clifford Boynes v. Limetree Bay Ventures*, No. 1:21-cv-0253, ECF No. 139 at ¶¶ 62-118 (D.V.I.) (amended complaint) (filed Feb. 2, 2023). Plaintiffs' causes of action include negligence, negligence per se, creating an abnormally dangerous condition, response costs under a federal environmental statute, public and private nuisance, and negligent and intentional infliction of emotional distress. *Id.* at ¶¶ 132-237.

One of the Defendants named in the USVI case is Limetree Bay Ventures. During the time period relevant to the USVI case, Mr. Rinker served as the CEO of Limetree Bay Ventures; Mr. Rinker also served as CEO during the relevant time of two other Limetree Bay entities: Limetree Bay Refining and Limetree Bay Terminals, both of which are also defendants in the USVI case. In October 2024, Plaintiffs announced an intention to depose Mr. Rinker in connection with the USVI case. At the time (and continuing to the present), Mr. Rinker was represented by the undersigned, Robert Bittman d/b/a Bittman Law Firm, PLLC ("BittmanLaw").[5] On January 9, 2025, Mr. Rinker retained the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC ("Baker Donelson") as joint counsel with BittmanLaw in connection with Mr. Rinker's potential testimony at a deposition and/or trial in the USVI case; Baker Donelson also represented two named defendants in the USVI case: Limetree Bay Ventures and EIG Global Energy Partners, LLC.

---

[5] When used in this motion, BittmanLaw refers to the undersigned, Robert J. Bittman, who is the sole attorney at the firm.

Following several continuances agreed upon by counsel, Rinker's deposition was scheduled to take place in Houston, Texas, on July 16, 2025. A week before the scheduled deposition, BittmanLaw notified Plaintiffs' counsel that Rinker would "be asserting his rights under the Fifth Amendment to the United States Constitution" and therefore would not answer questions relating to the USVI case. *See* Ex. 2 (July 9, 2025 letter from BittmanLaw). The letter further noted that, "As I'm sure you are aware, the events at Limetree Bay are the subject of a criminal investigation." *Id.*

Two events occurred on July 15, 2025, the day before Rinker's scheduled deposition. First, four defendants in the USVI case (Limetree Bay Ventures, Limetree Bay Refining, Limetree Bay Terminals, and EIG) filed a Motion to Stay the USVI case based on a pending criminal investigation, stating that the defendants would not be able to present a substantive defense because several critical witnesses – including Mr. Rinker – would be asserting their Fifth Amendment Rights and not testifying. *See Boynes v. Limetree Bay Ventures*, *supra*, at ECF No. 1298.[6] Second, Mr. Rinker moved in the Southern District of Texas (where Mr. Rinker's deposition was scheduled to occur) for a protective order that would allow Mr. Rinker to postpone his appearance at a deposition until after the District Court overseeing the USVI case had ruled on the Stay Motion filed the same day or until after Mr. Rinker was no longer in legal jeopardy, i.e., until the statute of limitations on potential criminal violations ran in May 2026. *See Clifford Boynes et al. v. Limetree Bay Ventures et al.*, No. 25-mc-1301 (S.D. Tex.) (filed July 15, 2025). The protective-order motion explained that the federal government had taken several steps indicating that the events underlying the USVI case were under criminal investigation. *See id.* at 2-3 (noting that the U.S. Attorney for the District of the Virgin Islands sent an email on June 11, 2021, stating that

---

[6] The Stay Motion remains pending before the district court in the Virgin Islands.

"one or more of the recent events at Limetree Bay Refinery may constitute a criminal violation of the federal Clean Air Act"; and that in January 2023, a federal grand jury subpoena issued to EIG Management Company seeking documents about the Limetree Bay Refinery).[7]   The motion therefore requested that Mr. Rinker not be required to testify at a deposition before May 2026— five years after the last incident at the Limetree Bay Refinery, *see* 18 U.S.C. § 3282 (default federal statute of limitations is five years)—and that such a delay would not prejudice plaintiffs because the USVI case is currently scheduled for trial in November 2026.  *Id.* at 3-5.[8]  Due to the pending Motion to Stay and Rinker's Motion for a Protective Order, BittmanLaw informed counsel for Plaintiffs that Mr. Rinker would not appear for the deposition that had been scheduled for the following day.

On July 16, 2025, Plaintiffs in the USVI case followed through with their threat and issued to BittmanLaw and two other law firms subpoenas from the District Court in the Virgin Islands that this motion seeks to have quashed.  *See* Ex. 5 (July 16, 2025 email from Plaintiffs to law firms).[9]  That Subpoena, which commands compliance in the District of Columbia by August 5,

---

[7] The events at Limetree Bay are the subject of a criminal investigation by the United States Department of Justice.  On June 11, 2021, shortly after the events at Limetree Bay, the United States Attorney for the District of the Virgin Islands wrote counsel for the Refinery that the United States Attorney "has received information that suggests one or more of the recent events at Limetree Bay Refinery may constitute a criminal violation of the federal Clean Air Act." Ex. 3 (June 11, 2011 Letter from U.S. Attorney Shappert to Perkins Coie).  Thereafter, the FBI and EPA conducted several interviews and other investigation.  Approximately two years later, on May 23, 2023, a grand jury for the U.S. District Court in the Virgin Islands issued a subpoena to EIG requesting documents relating to the events at Limetree Bay.  A letter from the United States Attorney's Office in the Virgin Islands accompanying the subpoena stated that the subpoena was issued "[p]ursuant to an official investigation being conducted by a federal Grand Jury in the District of the Virgin Islands of suspected violations of federal and related territorial criminal laws."  Ex. 4 (May 23, 2023 subpoena to EIG).

[8] The protective-order motion remains pending before the district court in the Southern District of Texas.

[9] Other than BittmanLaw, the two law firms issued a subpoena for communications with defense counsel are (1) R. McConnell Group PA, local counsel for Mr. Rinker in Houston; and (2) Jones

2025, advances four production requests. The first three seek "all Documents and Communications" between BittmanLaw and "counsel or other representatives of any Class Action Case Defendant" concerning:

1.  "any subpoena or deposition, including all Documents and Communications concerning the invocation of the Fifth Amendment, and the scheduling, delay, or postponement of any deposition";

2.  "any motion for protective order, motion to quash, motion to stay, or any other similar filed or contemplated motions, including the purported need for or timing of any such filed or contemplated motion" and

3.  "any criminal investigation, grand jury subpoena, or other similar proceeding concerning the Limetree Bay Refinery."

*Id.* The final category seeks "all Documents and Communications concerning any criminal investigation, grand jury subpoena, or other similar proceeding, including target letters, subpoenas, or any other similar Documents or Communications from the Department of Justice, the United States Attorney's Office for the District of the Virgin Islands, and/or any federal grand jury relating to the status and/or ongoing nature of any criminal investigation or proceedings concerning the Limetree Bay Refinery." *Id.* BittmanLaw now moves to quash this subpoena.

## IV.    LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure permits parties to obtain subpoenas that require the production of "documents, electronically stored information, or tangible things." Fed. R. Civ. P. 45(a)(1)(D). But Rule 45 also directs the "court for the district where compliance is required" to "quash or modify" any subpoena that "requires disclosure of privileged or other protected matter" or that "subjects" the subpoena recipient to "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Where, as here, the subpoena recipient seeks to have the subpoena quashed

---

Walker LLP, a law firm that represents one of the other third-party witnesses who informed Respondents that their client, a former Limetree Bay employee, would also be asserting his 5th Amendment Rights and not testifying at a deposition.

based on a claim of privilege, the subpoena recipient must "expressly make" the privilege claim and "describe the nature of the withheld documents, communications, or tangible things in manner that, without revealing information itself privileged or protected, will enable parties to assess the claim. Fed. R. Civ. P. 45(e)(2)(A); *see Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010).    BittmanLaw as the movant bears the burden to establish that a subpoena should be quashed, *see Petruss Media Grp., LLC v. Advantage Sales & Mktg. LLC*, 347 F.R.D. 39, 42 (D.D.C. 2024), and has readily met that burden here.

## V.    ARGUMENT

After BittmanLaw explained through a letter directly to Respondents' counsel and in a protective-order motion filed in the Southern District of Texas that Mr. Rinker would assert his constitutional right against self-incrimination at any deposition scheduled before the statute of limitations had lapsed in connection with a matter that the government has indicated through statements and issuance of at least one grand jury subpoena is under criminal investigation, Respondents have responded by trying to obtain through a subpoena communications and documents that reflect the confidential deliberations of attorneys.   The Court should quash that subpoena for two independent reasons.  First, the subpoena seeks "disclosure of privileged or other protected matter," Fed. R. Civ. P. 45(d)(3)(A)(iii), namely communications and documents covered by the attorney-client and work-product privileges.  Second, the subpoena imposes an "undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv), in that the materials it seeks bear no reasonable relationship to the underlying USVI case.  In the alternative, the Court should enter a protective order preventing the discovery that the plaintiffs seek.

**A. The subpoena should be quashed because it seeks disclosure of privileged or other protected matter.**

Two "recognized privilege[s]," *Petruss Media Group*, 347 F.R.D. at 44, preclude the plaintiffs from obtaining any responsive materials that they seek through their subpoena. First is the attorney-client privilege, the "oldest of the privileges for confidential communications known to the common law," which serves to "encourage full and frank communications between attorneys and their clients and thereby [to] promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Establishing the attorney-client privilege requires four showings: (1) "the asserted holder of the privilege is . . . a client"; (2) the person to whom the communication was made was both a member of the bar and was acting as a lawyer; (3) "the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on the law, (ii) legal services, or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort"; and (4) the privilege has been claimed and not waived. *Banneker Ventures, LLC v. Graham*, 253 F.Supp.3d 64, 70 (D.D.C. 2017) (citing *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)). Also relevant here is an extension of the attorney-client privilege known as the "joint defense privilege" or the "common interest rule," which "protects from forced disclosure communications between two or more parties and/or their respective counsel if they are participating in a joint defense agreement." *United States v. Hsia*, 81 F.Supp.2d 7, 16 (D.D.C 2000).

The second applicable privilege is the work-product privilege, which provides even "broader" protection than the attorney-client privilege. *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). As codified in Federal Rules of Civil Procedure, the work-product privilege does not permit disclosure of documents "prepared in anticipation of litigation or for trial," and specifically

guards against "disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(A),(B).  The work-product privilege offers "lesser protection to fact work product (objective facts and information collected by the attorney or her agents) than to opinion work product (theories and information flowing from the mental processes of the attorney)," *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 391 F. Supp. 3d 43, 49 (D.D.C. 2019), *aff'd sub nom. Jud. Watch, Inc. v. United States Dep't of Just.*, 806 F. App'x 5 (D.C. Cir. 2020), but fundamentally exists to protect lawyers who are assembling facts and law in anticipation of litigation, *see Hickman v. Taylor*, 329 U.S. 495, 508 (1947).  Fact work product may be overcome with a showing of "substantial need," *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1302 (D.C. Cir. 1980), which means establishing "the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and 'special circumstances' excuse the movant's failure to obtain the requested materials itself."  *F.T.C. v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 155 (D.C. Cir. 2015) (citation omitted).  Opinion work product, by contrast, is "virtually undiscoverable." *Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997).

### i.    The subpoena's first category seeks privileged information

Those two privileges – the attorney-client and work-product privileges – cover any responsive communications and documents sought under Respondents' Subpoena.  Request No. 1 seeks any documents and communications between BittmanLaw and any other counsel "concerning the invocation of the Fifth Amendment" or "the scheduling, delay, or postponement of any deposition."  *See* Ex. 5.  BittmanLaw's discussions with its client, Mr. Rinker, about invoking his rights under the Fifth Amendment are squarely covered under the attorney-client privilege, and any communications between BittmanLaw with co-counsel Baker Donelson about

Mr. Rinker's invocation are privileged either under the attorney-client privilege (to the extent those communications implicated confidential communications with a client, Rinker, represented both by BittmanLaw and Baker Donelson) or under the work-product privilege (to the extent those communications did not implicate confidential client communications but nonetheless were carried out in anticipation of litigation, namely the ongoing USVI case).  BittmanLaw also had communications with counsel for other defendants under a joint defense agreement in connection with the USVI case, and those communications would likewise be covered under both the attorney-client privilege, *see Hsia*, 81 F.Supp.2d at 16, and the work-product privilege because they occurred solely in connection with the ongoing USVI litigation.  The Subpoena's first category would also cover communications that BittmanLaw had with counsel for other defendants who decided to invoke the Fifth Amendment protection against self-incrimination.  But those communications or any notes stemming from them, while not conducted under a joint defense agreement, would fall well within the scope of the work-product privilege because they occurred entirely within the context of the USVI case.  Similarly, any discussions between BittmanLaw and Baker Donelson or other legal representatives for defendants concerning the scheduling of Rinker's depositions would reflect those attorneys' mental impressions and strategic considerations, and are accordingly protected under the work-product privilege.  To the extent any of the attorney work product responsive to the first category in the subpoena constitutes fact work product, the plaintiffs can offer no plausible argument that they have a "substantial need," *F.T.C.* 778 F.3d at 155, for information entirely ancillary to the merits of proving their alleged causes of action in the underlying USVI case.

ii.    **The subpoena's second and third categories also seek privileged information**

The same analysis applies for the Subpoena's second and third requests, which seek communications and documents concerning several types of legal filings (Request No. 2) or about criminal investigations, grand jury subpoenas, or similar proceedings (Request No. 3).[10]  In both instances, any responsive materials—such as emails or other communications with counsel from Baker Donelson or other counsel, or notes made in anticipation of or in connection with ongoing litigation, or confidential client communications—are not subject to disclosure under the attorney-client or work-product privilege, and to the extent any documents or communications would constitute fact work product, Respondents can identify no need, let alone a substantial need, for these collateral materials.[11]  Such a result should hardly be surprising where a litigant seeks to pry open an attorney's files through a subpoena.  *See, e.g.*, *Winston & Strawn LLP v. Janssen Prods., L.P.*, No. 22-cv-225061, 2022 WL 3588106, at *3 (D.N.J. Aug. 22, 2022) (granting law firm's motion to quash a subpoena on the ground that it sought information subject to the attorney-client and work product privileges).  Quashing the Subpoena is particularly appropriate here given that, consistent with Rule 45's broad language safeguarding against disclosure of "privileged *or other protected matter*," Fed. R. Civ. P. 45(d)(3)(A)(iii) (emphasis added), "federal courts have

---

[10] Request No. 4 of the Subpoena's seeks any documents and communications from the federal government about a criminal investigation related to the events underlying the USVI case.  The two responsive documents in BittmanLaw's possession – the Virgin Islands U.S. Attorney's June 2021 email and the 2023 federal grand jury subpoena – were appended by the Defendants to their Motion to Stay the underlying litigation in the USVI case and are attached as exhibits to this Motion to Quash.  *See supra,* Exhs. 3 and 4.

[11] BittmanLaw stands ready to provide any responsive materials to the Court for in-camera examination, which would confirm that such materials are protected by the attorney-client and/or the work-product privileges.  *See* 9A Wright & Miller, Federal Practice and Procedure, § 2458 (3d ed. 2025) ("Whenever the court believes it is appropriate to do so, it can examine requested documents in camera to determine whether they are protected by a privilege.").

recognized that privacy interests and confidentiality concerns can factor into a decision whether to quash a subpoena under Rule 45" even where, unlike here, "the information requested by the subpoena is not subject to a federal evidentiary privilege." *Jordan v. Comm'r of Mississippi Dep't of Corr.*, 947 F.3d 1322, 1336 (11th Cir. 2020).

**B. The subpoena should be quashed because it imposes an undue burden.**

This Court should quash the Subpoena for a second, independent reason: it imposes an "undue burden" on BittmanLaw. Fed. R. Civ. P. 45(d)(3)(A)(iv). A subpoena subjects the recipient to an "undue burden" where it constitutes a request that is "unreasonable" or "oppressi[ve]" in the context of all the circumstances of the case. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984). The undue-burden standard requires balancing "the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Dell Inc. v. Decosta*, 233 F.Supp.3d 1, 3 (D.D.C. 2017) (citation omitted). The "ultimate question" in that inquiry is "whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). Courts should therefore analyze "not just the relevance of information sought, but the requesting party's need for it." *Id.*; *see Jordan*, 947 F.3d at 1329 n.3 ("[A] subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information."). Finally, a party seeking information from a nonparty – such as BittmanLaw here – must surmount a "more demanding" undue-burden standard because nonparties are "strangers" to the litigation who have "no dog in [the] fight." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) (noting that Rule 45 permits courts to "limit discovery to prevent undue

burden to third parties, even if the discovery sought is within the permissible scope of the Rules") (brackets and citation omitted).

Those principles militate strongly in favor of quashing the Subpoena here as imposing an impermissible undue burden on BittmanLaw.  The information sought through the Subpoena is entirely collateral to the underlying USVI case, which involves a class-action lawsuit alleging that toxic emissions from the Limetree Bay Refinery in the first half of 2021 harmed plaintiffs, with causes of action rooted in negligence, nuisance, infliction of emotional distress, and other similar doctrines.  Respondents' attempt to pierce the attorney-client and work-product protections represents at best a fishing expedition to prove some sort of collusion among attorneys representing defendants in the USVI case and BittmanLaw's representation of Mr. Rinker, perhaps predicated on the entirely speculative and implausible theory that Mr. Rinker has improperly invoked his Fifth Amendment rights (in the face of clear evidence of a criminal investigation and exposure) in order to protect other defendants in the civil litigation.[12]  To overcome the first part of the undue-burden standard, Respondents must establish that the "information sought must likely (not just theoretically) have marginal benefit in litigating important issues."  *Virginia Dep't of Corr.*, 921 F.3d at 189.  They cannot do so.[13]

### C.  Alternatively, the Court should enter a protective order preventing discovery.

Alternatively, the Court should enter a protective order preventing discovery of BittmanLaw.  A motion to quash is similar to a motion for a protective order that discovery not be

---

[12] It is equally, if not more, plausible that Mr. Rinker's testimony could benefit rather than harm the defendants in the USVI case.

[13] Although the "dollars-and-cents costs associated with" complying with Respondents' subpoena request would not be astronomical, the Subpoena nonetheless "impose[s] a burden by invading privacy [and] confidentiality interests," *Virginia Dep't of Corr.*, 921 F.3d at 189, for the reasons given in Part V.A.

14

had under Rule 26(c) and is judged under similar standards.  *See Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C.).  Fed. R. Civ. P. 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

For the reasons discussed above, a protective order is merited here.  Respondents' Subpoena seeks principally to harass and unduly burden BittmanLaw and, potentially, the defendants in the underlying USVI case.  The Subpoena seeks information wholly divorced from the merits of the class-action lawsuit focused on the Limetree Bay Refinery in the Virgin Islands, and satellite litigation seemingly focused on the viability of an invocation of a Fifth Amendment protection at a deposition, where the prospective deponent has indicated a readiness to testify after the statute of limitations has lapsed (in May 2026), which is well before the scheduled trial (in November 2026), is unwarranted.  Moreover, the Subpoena seeks wholly privileged or protected information, or information that is at a minimum closely intertwined with privileged or protected information such that it is impractical and unduly burdensome to separate the non-privileged from privileged information.  There is good cause to protect BittmanLaw from the plaintiffs' Subpoena.

## VI.    CONCLUSION

For the foregoing reasons, the Court should quash Respondents' subpoena issued on July 16, 2025, to BittmanLaw.

Dated: August 4, 2025

Respectfully submitted,

Robert J. Bittman (DC Bar. ID: 464947)
BITTMAN LAW FIRM PLLC
The Willard Office Building
Suite 400
1455 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone: 202-360-0360
rbittman@bittmanlaw.com

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing document to be served via email on the following:

> Daniel H. Charest, Esq.
> 900 Jackson St., Ste. 500
> Dallas, TX  75202
> dcharest@burnscharest.com
> *Counsel for Respondents*

Dated: August 4, 2025

Robert J. Bittman